UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JESSIE E. JONES,

        Plaintiff,                                Case No. 2:08-cv-133

v.                                              HON. ROBERT HOLMES BELL

MARY BONEVELLE,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. On August 6, 2009, this Court ordered service of Plaintiff's complaint on Defendant Mary Bonevelle. On November 20, 2009, Defendant filed a motion for summary judgment on the merits (docket # 22). On February 18, 2011, Defendant filed a second motion for summary judgment on the ground that Plaintiff failed to exhaust his available administrative remedies, as well as on the merits (docket #38). On April 19, 2011, Plaintiff filed a response in opposition to Defendant's second motion for summary judgment (docket #42). Upon review, I recommend that Defendant's second motion for summary judgment be granted.

        Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE,

ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d Ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Plaintiff is presently incarcerated at Marquette Branch Prison (MBP). Previously, Plaintiff was incarcerated at the Alger Maximum Correctional Facility (LMF). In his *pro se* complaint, he sues Defendant LMF Hearings Investigator Mary Bonevelle for retaliation in violation of the First Amendment.

Defendant claims she is entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates

3

must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control  *Id.* at ¶ P.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶ P.  The Policy Directive also provides the following directions for completing grievance forms:  "The issues shall be stated briefly.  Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ R (emphasis in original).  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances.  *Id.* at ¶ GG.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III.  *Id.* at ¶ FF.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶ FF.  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ GG.  Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process.  *Id.* at ¶ X.   "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ."  *Id* at ¶ HH.

4

Defendant contends that Plaintiff did not exhaust his administrative remedies because his grievances were rejected at all three steps of the grievance procedure for failing to comply with the procedural requirements contained in the grievance policy. Plaintiff asserts that on March 20, 2008, he submitted a completed grievance form LMF-08-03-1481-28i according to step I, after he could not orally resolve the problem with the Defendant due to his confinement to segregation. On March 21, 2008, the grievance was rejected for "not attempting to resolve this issue with the staff member involved prior to filing this grievance." (Exhibit B). On April 2, 2008, Plaintiff appealed the response of step I to step II, which was denied for "not attempting to resolve this issue with the staff member involved prior to filing this grievance" on April 17, 2008. He appealed the response of step II to step III, which was denied for "not attempting to resolve this issue with the staff member involved prior to filing this grievance" on June 3, 2008. Plaintiff argues that he appealed this rejection all the way to step III and there are none beyond this stage. (Plaintiff's Responsive Pleading in Opposition of Defendant Motion for Summary Judgment, at 4.) The applicable policy directive provided that a rejected grievance may be appealed, but that "[a] new grievance shall not be filed regarding the rejection." P.D. 03.02.130(I). Grievance LMF-08-03-1481-28i was rejected at all three steps of the grievance process as not attempting to resolve the issue with the staff member involved prior to filing this grievance. Because Plaintiff appealed the rejection of his grievance through all three steps of the grievance process, Plaintiff did not complete the administrative review process in accordance with the prison grievance procedures. Therefore, as long as the prison "clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, 'a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust.'" *Burnett v. Howard*, No. 2:09-CV-37, 2010 WL 1286256, at *1 (W.D.Mich. Mar.30, 2010) (Bell, J.) (quoting *Grear v. Gelabert*, No. 1:07-CV-203, 2008 WL 474098, at *2 n. 1

(W.D.Mich. Feb.15, 2008) (Jonker, J.)). Accordingly, it is recommended that the Court find that Plaintiff has failed to demonstrate exhaustion of available administrative remedies.

Defendant argues that Plaintiff cannot maintain a retaliation claim against her because Plaintiff cannot establish that he suffered an adverse action as the result of Defendant's conduct. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir.2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

Filing a grievance is constitutionally protected conduct under the First Amendment. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir.2001); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir.1996). Plaintiff therefore has properly alleged the first element of a retaliation claim. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Confiscation of legal papers and other property may be considered sufficiently adverse to satisfy the adverse-action requirement of *Thaddeus-X*. *See Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (citing *Walker v. Bain*, 257 F.3d 660, 664 (6th Cir. 2001)). In this case, Plaintiff

has met the requirement by alleging that on March 19, 2008, Defendant entered Plaintiff's cell while Plaintiff was in the cedar unit recreation yard and stole his legal exhibits, pleadings and other legal material. (Plaintiff's Responsive Pleading in Opposition of Defendant Motion for Summary Judgment, at 5.) With respect to the causation element, temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Where, as here, Plaintiff alleges that "before leaving the unit, Defendant came to the entrance of the cedar unit recreation yard and with direct eye contact called-out to the plaintiff, in saying 'You still haven't learned your lesson about suing me. I just left your cell and look what I stole… if you want me to stop taking your shit, you better drop the law suit.'" (Plaintiff's Responsive Pleading in Opposition of Defendant Motion for Summary Judgment, at 6.) With respect to the causation element, Plaintiff Jones in this case, like the plaintiffs in *Thaddeus-X*, has "done more than simply allege retaliation: in [his] verified complaint and in an additional affidavit, [he has] put forward a number of specific, nonconclusory allegations and identified affirmative evidence that could support a jury verdict at trial." *Thaddeus-X*, 175 F.3d. at 399-400. And, as in *Thaddeus-X*, "[t]hese allegations have essentially been met with summary denials." *Id*. at 400. Therefore, Plaintiff properly shouldered his burden by producing an affidavit supporting the allegations in his responsive pleading.

Defendant asserts that she did not go to the Cedar Segregation Unit on March 19, 2008. Defendant indicates that at 9:56 a.m., she saw inmate Tillman #273361, who at the time was locked in D-wing of Cedar Unit. Plaintiff was at that time locked in Cedar-206, which is not in the

same wing of Cedar Segregation. Defendant asserts that the Cedar Segregation Unit logbook indicates that on March 19, 2008, Jones was released for yard at 8:38 a.m. and was returned to his cell at 9:37 a.m., or 19 minutes before defendant entered the Housing Unit to speak with inmate Tillman. Defendant states that the evidence shows that Jones was back in his cell at the time she entered the Cedar Housing Unit, and that plaintiff's claim to the contrary is inaccurate and unsupported. (Defendant's Brief in Support of Second Motion for Summary Judgment, at 6.) However, other than Defendant's own affidavit, there is no other evidence to support her allegation. Accordingly, there is a genuine issue as to the material fact regarding whether Defendant entered Plaintiff's cell and removed Plaintiff's legal material. In the opinion of the undersigned, Defendant is not entitled to summary judgment on the merits of the claim.

Defendant asserts that she is entitled to summary judgment on Plaintiff's official capacity claims against her because such claims are barred by the Eleventh Amendment. Any claims against the individually-named Defendants in their official capacities do not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished). Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).[1] The State of Michigan has not

---

[1] The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as monetary damages, is deemed to be against the State, whose officers are the nominal Defendants,

consented to civil rights suits in the federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Eleventh Amendment therefore bars official-capacity suits for damages against its employees. Therefore, any official capacity claims are properly dismissed.

Defendant also claims that Plaintiff's individual capacity claims are barred by qualified immunity because Plaintiff has failed to show a violation of clearly established law. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously stated, a question of fact exists precluding summary judgment on

---

the claim is barred by the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir. 1994).

the merits of plaintiff's claims. Accordingly, it is recommended that the Court find that qualified immunity defense is not available.

As discussed above, there is genuine issue as to material fact regarding Plaintiff's First Amendment retaliation claim. However, because the exhaustion requirement is no longer discretionary, but is mandatory, the Court does not have the discretion to provide a continuance in the absence of exhaustion. *See Wright v. Morris*, 111 F.3d 414, 417 (6th Cir.), *cert. denied*, 522 U.S. 906, 118 S.Ct. 263, 139 L.Ed.2d 190 (1997). Rather, dismissal of this action without prejudice is appropriate when a prisoner has failed to show that he exhausted available administrative remedies. *See White v. McGinnis*, 131 F.3d 593, 595 (6th Cir.1997).

Accordingly, for the foregoing reasons, I recommend that Defendant's second motion for summary judgment (docket #38) be granted and this case be dismissed without prejudice for failure to exhaust administrative remedies.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt

of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   August 29, 2011